ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

SEP 2 3 2015

JAMES N. HATTEN, Clerk
By _____ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| TRINA QUEEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | |
| UNITED STATES OF AMERICA; ) | |
| PATTI LANDERFELT, CRNA; ) | **1:15-CV-3338** |
| EMORY UNIVERSITY, INC. d/b/a ) | |
| EMORY VA ANESTHESIOLOGY; ) | |
| and THE EMORY CLINIC, INC. ) | |
| d/b/a  EMORY VA ) | |
| ANESTHESIOLOGY; ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

### COMPLAINT FOR DAMAGES

Plaintiff Trina Queen, by and through her counsel, hereby files this Complaint for Damages and shows this Honorable Court the following:

### JURISDICTION, VENUE, AND PARTIES

1.

This court has jurisdiction pursuant to 28 U.S.C. §§ 1346(b) and 2671, et seq., as this is an action for damages resulting from personal injuries caused by the negligent act of an employee of Defendant United States of America while acting

within the scope of her employment.

2.

On June 6, 2014, in compliance with 28 U.S.C. § 2675, Plaintiff Trina Queen filed a notice of administrative claim, Form 95, with the appropriate administrative agency – the Department of Veteran's Affairs.

3.

Plaintiff's claim was denied by the Department of Veteran's Affairs on March 23, 2015.

4.

Plaintiff's claim under 28 U.S.C. §§ 1364(b) and 2671, et seq. is ripe to be litigated pursuant to 28 U.S.C. § 2675(a).

5.

This court has jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claim for damages resulting from personal injuries, arising under the laws of the State of Georgia, because the state law claim is so related to Plaintiff's claim under 28 U.S.C. §§ 1364(b) and 2671, et seq., that it forms part of the same case or controversy.

6.

Although Plaintiff does not believe she is required to file an O.C.G.A. § 9-

-2-

11-9.1 professional malpractice affidavit to state a claim in this Court, out of an abundance of caution, Plaintiff incorporates by reference the affidavit of Thomas A. Renter, CRNA who is qualified as an expert witness, pursuant to O.C.G.A. § 24-7-702, on the issues raised in this Complaint. (Affidavit of Thomas A. Renter, CRNA; attached as Exhibit "A"). Said affidavit specifies at least one negligent act or omission on the part of the defendants, and the factual basis that underlies the negligent acts or omissions that resulted in the injuries to Plaintiff Trina Queen.

7.

Venue is proper in this judicial district and division pursuant to 28 U.S.C. §§ 1402(b); and 1391(b)(2) because the negligent act complained of occurred in the Northern District of Georgia at the Atlanta VA Medical Center located at 1670 Clairmont Road, Decatur, GA 30033.

8.

Plaintiff Trina Queen is an adult resident of the State of Georgia.

9.

The Department of Veteran's Affairs is an agency of Defendant United States of America which provides healthcare services to veterans.

10.

The Department of Veteran's Affairs provides healthcare services to

veterans through the Veterans Health Administration.

11.

The Atlanta VA Medical Center is a medical facility operated by the Veterans Health Administration that provides health care services to veterans in the Atlanta, Georgia area.

12.

Defendant United States of America can be served at the United States Attorney's Office, Richard B. Russell Federal Building, 75 Spring Street S.W., Suite 600, Atlanta, Georgia 30303.

13.

Defendant Patti Landerfelt, CRNA, is a certified registered nurse anesthetist licensed to practice in the State of Georgia.

14.

Defendant Landerfelt resides at 1436 Winchester Trail, Riverdale, GA 30296 and may be served with process personally at that address in accordance with FRCP R. 4.

15.

At all times material to this action, Defendant Landerfelt was an employee of Defendant United States of America, as defined 28 U.S.C. § 2671, and was

acting within the scope of her employment.

16.

In the alternative, at all material dates and times, Defendant Landerfelt was an employee and/or agent of Defendant Emory University, Inc. d/b/a Emory VA Anesthesiology and was acting within the course and scope of her employment/agency with Defendant Emory University, Inc. d/b/a Emory VA Anesthesiology.

17.

Defendant Emory University, Inc. d/b/a Emory VA Anesthesiology is a domestic corporation capable of doing business in Georgia.

18.

Defendant Emory University, Inc. d/b/a Emory VA Anesthesiology has its registered office located at 201 Dowman Drive, 101 Administration Building Atlanta, GA 30322, and may be served with process upon its registered agent Melinda Simon at that address.

19.

In the alternative, at all material dates and times, Defendant Landerfelt was an employee and/or agent of Defendant The Emory Clinic, Inc. d/b/a Emory VA Anesthesiology and was acting within the course and scope of her

employment/agency with Defendant The Emory Clinic, Inc. d/b/a Emory VA Anesthesiology.

20.

Defendant The Emory Clinic, Inc. d/b/a Emory VA Anesthesiology is a domestic corporation capable of doing business in Georgia.

21.

Defendant The Emory Clinic, Inc. d/b/a Emory VA Anesthesiology has its registered office located at 201 Dowman Drive, 101 Administration Building Atlanta, GA 30322, and may be served with process upon its registered agent Jane Jordan at that address.

## FACTUAL BACKGROUND

22.

On March 10, 2014, Trina Queen presented to the Atlanta VA Medical Center for an elective surgical bladder tuck procedure.

23.

She was intubated at 1314 by Patti Landerfelt, CRNA, who documented that she used the Glidescope device and that the intubation was "atraumatic."

24.

Ms. Queen was discharged home that same day, but returned the next morning at approximately 0217, with right mouth and jaw swelling, severe right-sided jaw and neck pain, trismus, dysphagia, and subcutaneous emphysema.

25.

A CT scan revealed, among other things:

Numerous pockets of gas in the right-sided of the neck principally in the submandibular space and to a lesser degree around the carotid space, seen in conjunction with mild chronic inflammatory changes. These findings may be iatrogenic if there was attempt at IJ central venous line placement during yesterday's operative procedure. Superimposed infection is not excluded, including the possibility of gas forming organism and necrotizing fasciitis.

26.

Ms. Queen was evaluated by an otolaryngology resident, who concluded that she may have experienced oropharyngeal or hypopharyngeal trauma from the intubation the previous day.

27.

Ms. Queen was taken to surgery by Praveel Duggal, M.D., an otolaryngologist, who performed a direct laryngoscopy and right neck dissection and exploration.

28.

Dr. Duggal discovered a 1 cm laceration along the right glossotonsillar

sulcas. He also noted purulence pooling along the right side of Ms. Queen's tongue.

During neck exploration, Dr. Duggal encountered an opening in the neck that

tracked toward the oral defect, which was filled with more purulent fluid and was

found to connect directly to the oral laceration.

29.

After the laceration was identified, Anesthesiologist Wykena Jackson, M.D.

dictated an addendum to the March 10, 2014 anesthesiology note, which read:

> Ms. Queen presents to the ED today for pain on the right side of her face.
> Workup revealed submandibular air on CT scan. Once informed by the ENT
> surgeon of her findings, we reevaluated the perioperative course. Intubation
> was fairly uneventful. Upon laryngoscopy with the glidescope, the tip of the
> endotracheal tube was not immediately visible on the glidescope screen.
> This is not unusual. The CRNA redirected the tip of the tube so that it was
> visible on the screen and visible entering the vocal cords with ease. During
> the period of the time when the tip of the endotracheal tube was not visible,
> excess force was not being used in advancing the endotracheal tube.
> Intubation was otherwise easy. These series of events occurred over
> approximately a period of 5 seconds. There was no blood or other signs of
> trauma present.

## COUNT I – MEDICAL NEGLIGENCE

30.

Plaintiff adopts and reincorporates Paragraphs 1 through 29, as if fully set

forth herein.

31.

At all material dates and times, Plaintiff Trina M. Queen was under the

continuous medical care and treatment of the doctors, nurses, and staff at the Atlanta VA Medical Center in Atlanta, Georgia.

32.

The United States of America, by and through its agency, employees, servants, agents and/or apparent agents, including but not limited to Patti Landerfelt, CRNA, owed Plaintiff Trina M. Queen a duty of care to act within the prevailing professional standard of care for medical providers under like conditions and similar circumstances.

33.

Specifically, Defendant Patti Landerfelt, CRNA had a duty toward Plaintiff Trina M. Queen to exercise that degree of care and skill ordinarily employed by nurse anesthetists when using video laryngoscopy for elective intubation procedures.

34.

The standard of care required that Defendant Landerfelt maintain constant visual sight of the tip of the endotracheal tube, as she passed it through Plaintiff Trina M. Queen's mouth and oropharynx during the March 10, 2014 elective intubation with the Glidescope device.

35.

In direct violation of the standard of care, Defendant Landerfelt failed to maintain constant visual sight of the tip of the endotracheal as she passed it through Plaintiff Trina M. Queen's mouth and oropharynx during the March 10, 2014 elective intubation with the Glidescope device.

36.

The standard of care further required that Defendant Landerfelt inspect the oropharynx after losing sight of the tip of the endotracheal tube, and recognize that she had caused an iatrogenic oropharyngeal injury.

37.

In direct violation of the standard of care, Defendant Landerfelt failed to inspect the oropharynx after losing sight of the tip of the endotracheal tube, and failed to appreciate that she had caused an iatrogenic oropharyngeal injury.

38.

As a direct and proximate result of Defendant Landerfelt's negligence, Plaintiff Trina M. Queen suffered an iatrogenic injury to her oropharynx, which Defendant Landerfelt failed to appreciate she had caused.

## COUNT II – LIABILITY OF DEENDANT UNITED STATES OF AMERICA

## IN ACCORDANCE WITH 28 U.S.C. § 2674

39.

Plaintiff adopts and reincorporates Paragraphs 1 through 38, as if fully set forth herein.

40.

Upon information and belief, at all material dates and times, Patti Landerfelt, CRNA was acting within the course and scope of her actual employment or agency with Defendant United States of America and, in accordance with 28 U.S.C. § 2674, Defendant United States of America is liable for her act or omissions and any injuries and damages arising therefrom.

## COUNT III – RESPONDEAT SUPERIOR

41.

Plaintiff adopts and reincorporates Paragraphs 1 through 40, as if fully set forth herein.

42.

In the alternative, Defendant Landerfelt was acting within the course and scope of her employment/agency with Defendant Emory University, Inc. d/b/a Emory VA Anesthesiology.

43.

Defendant Emory University, Inc. d/b/a Emory VA Anesthesiology is vicariously liable for the negligence of its employees and/or agents, including but not necessarily limited to Defendant Landerfelt under the doctrine of *respondeat superior*.

44.

In the alternative, Defendant Landerfelt was acting within the course and scope of her employment/agency with Defendant The Emory Clinic, Inc. d/b/a Emory VA Anesthesiology.

45.

Defendant The Emory Clinic, Inc. d/b/a Emory VA Anesthesiology is vicariously liable for the negligence of its employees and/or agents, including but not necessarily limited to Defendant Landerfelt under the doctrine of *respondeat superior*.

## DAMAGES

46.

Plaintiff adopts and reincorporates Paragraphs 1 through 45, as if fully set forth herein.

-12-

47.

As a direct and proximate result of Defendant Landerfelt's negligence, Plaintiff Trina M. Queen suffered injuries and damages, including but not necessarily limited to:

a. An iatrogenic oropharyngeal injury;

b. Oropharyngeal and neck infection;

c. A major surgical procedure to locate and repair the iatrogenic injury;

d. Physical pain and suffering;

e. Mental pain and suffering;

f. Physical impairment;

g. Permanent scarring and disfigurement;

h. All other damages, whether general or special, direct or consequential, which are deemed just and fair in accordance with applicable law.

**WHEREFORE**, Plaintiff Trina M. Queen demands a trial by jury. Plaintiff further demands judgment in the amount of Five Hundred Thousand Dollars ($500,000.00) as compensatory damages for Plaintiff's injuries and damages, as outlined above. Plaintiff further demands any additional relief this Court deems appropriate and just.

## CERTIFICATION OF FONT

This certifies that, in accordance with Local Rule 5.1, this document has been prepared using Times New Roman font, 14 point.

Respectfully submitted, this 23‾ day of September 2015.

Jennifer A. Kurle
Georgia Bar No. 140812
jen@kurlelaw.com

KurleLaw, LLC
One Decatur Town Center
150 E. Ponce de Leon Ave.
Suite 225
Decatur, GA 30030
Telephone: (404) 458-4080
Facsimile: (678) 550-6365

-14-

## AFFIDAVIT

**STATE OF FLORIDA** )
)
**COUNTY OF HILLSBOROUGH** )

Before me, the undersigned officer, duly authorized to administer oaths, came Thomas A. Renter, CRNA, who after being first duly sworn on oath, states as follows:

1.

I am over the age of twenty-one (21) years and I am competent to testify as an expert witness in this action for professional negligence arising out of the medical care and treatment rendered to Trina M. Queen in March 2014.

2.

I am a Certified Registered Nurse Anesthetist and have been in continuous practice as a nurse anesthetist since 1992. I am licensed to practice in the State of Florida and was licensed in Florida at the time the medical treatment, which is the subject of my review, took place. As part of my daily clinical practice, I regularly perform elective intubations in operative patients. I am familiar with video laryngoscopy and readily employ its use, when warranted by the clinical circumstances. For at least three of the five years preceding March 2014, I used the Glidescope device and am competent to speak to the standard of care for its use by nurse anesthetists. My experience is further detailed in my CV, which is attached and incorporated by reference.

3.

When used in this Affidavit, the term "standard of care" refers to the duties and responsibilities ordinarily owed and employed by nurse anesthetists using the Glidescope or other video laryngoscopy device to intubate.



PLAINTIFF'S
EXHIBIT

*A*

4.

In connection with giving this affidavit, I have reviewed the Atlanta VA Medical Center medical records for Trina Queen, which were provided to me by KurleLaw, LLC.

5.

The opinions expressed in this Affidavit are based on reliably applying my experience, training, education, knowledge and skills in treating patients like Trina M. Queen to the entries in her medical records. I hold these opinions to a reasonable degree of medical certainty.

6.

The Atlanta VA Medical Center records for Trina M. Queen reflect the following:

(a)    On March 10, 2014, Trina Queen presented to the Atlanta VA Medical Center for an elective surgical procedure;

(b)    She was intubated at 1314 by Patti Landerfelt, CRNA, who documented that she used the Glidescope device and that the intubation was "atraumatic."

(c)    Ms. Queen was discharged home that same day, but returned the next morning at approximately 0217, with right mouth and jaw swelling, severe right-sided jaw and neck pain, trismus, dysphagia, and subcutaneous emphysema.

(d)    A CT scan revealed, among other things:

Numerous pockets of gas in the right-sided of the neck principally in the submandibular space and to a lesser degree around the carotid space, seen in conjunction with mild chronic inflammatory changes. These findings may be iatrogenic if there was attempt at IJ central venous line placement during yesterday's operative procedure. Superimposed infection is not excluded, including the possibility of gas forming organism and necrotizing fasciitis.

(e)    Ms. Queen was evaluated by an otolaryngology resident, who concluded that she may have experienced oropharyngeal or hypopharyngeal trauma from the intubation the previous day.

2

(f)    Ms. Queen was taken to surgery by Praveel Duggal, M.D., an otolaryngologist, who performed a direct laryngoscopy and right neck dissection and exploration.

(g)    Dr. Duggal discovered a 1 cm laceration along the right glossotonsillar sulcas. He also noted purulence pooling along the right side of Ms. Queen's tongue. During neck exploration, Dr. Duggal encountered an opening in the neck that tracked toward the oral defect, which was filled with more purulent fluid and was found to connect directly to the oral laceration.

(h)    After the laceration was identified, Anesthesiologist Wykena Jackson, M.D. dictated an addendum to the March 10, 2014 anesthesiology note, which read:

> Ms. Queen presents to the ED today for pain on the right side of her face. Workup revealed submandibular air on CT scan. Once informed by the ENT surgeon of her findings, we reevaluated the perioperative course. Intubation was fairly uneventful. Upon laryngoscopy with the glidescope, the tip of the endotracheal tube was not immediately visible on the glidescope screen. This is not unusual. The CRNA redirected the tip of the tube so that it was visible on the screen and visible entering the vocal cords with ease. During the period of the time when the tip of the endotracheal tube was not visible, excess force was not being used in advancing the endotracheal tube. Intubation was otherwise easy. These series of events occurred over approximately a period of 5 seconds. There was no blood or other signs of trauma present.

7.

The Glidescope is a video laryngoscopy device that projects a real-time image of a patient's vocal cords on a screen and enables users to visualize the endotracheal tube passing between the vocal cords during intubation. The device does not project an image of the endotracheal tube as it is passed through the patient's oropharynx and, for this reason, patients are at risk for experiencing oropharyngeal injury during intubation if the Glidescope user fails to maintain continuous sight of the endotracheal tube as it is advanced through the oropharynx.

3

8.

Based upon my education, training, experience, and the medical records I have reviewed, it is my opinion that Patti Landerfelt, CRNA failed to exercise that degree of care and skill ordinarily exercised by nurse anesthetists generally under the same or similar circumstances and like surrounding conditions (the "standard of care").

9.

The standard of care required that CRNA Landerfelt maintain constant sight of the tip of the endotracheal tube, while advancing it through Ms. Queen's mouth and oropharynx.

10.

In direct violation of the standard of care, CRNA Landerfelt, failed to maintain sight of the tube as she advanced it through Ms. Queen's mouth and oropharynx, directly and proximately causing an iatrogenic oropharyngeal injury that she failed to appreciate.

11.

It is not the purpose of this affidavit to set forth each and every criticism that I have now or may have in the future regarding the care provided to Trina M. Queen by Patti Landerfelt, CRNA, but rather to be in compliance with Georgia Code Section 9-11-9.1 which requires that this Affidavit set forth one negligent act and the factual basis for my opinion.

**FURTHER AFFIANT SAYETH NOT.**

Thomas A. Renter

Thomas A. Renter, CRNA

Sworn to and subscribed before me
This ___ day of Sept. , 2015.

Notary Public
My Commission expires: 10/29/18

JAN SHADWICK
MY COMMISSION # FF 172828
EXPIRES: October 29, 2018
Bonded Thru Budget Notary Services

4

Last revised 7/23/2015

Thomas A. Renter, CRNA, LHRM*, CPHRM*
**Anesthesia Consulting**
2209 Greenhills Dr.
Valrico, FL 33596
(813) 662-7335 (home)
(813) 629-8579 (cell)
(813) 661-9240 (fax)
e-mail: renter@anesthesia-consulting.com (home office)
        mobile@anesthesia-consulting.com (e-mail to cell phone)

\*Licensed Healthcare Risk Manager, Florida
\*Certified Professional in Healthcare Risk Management, American Hospital Assoc.

## **Curriculum Vitae**

B.S.N. - Adelphi University, Garden City. NY
        1984 Graduate, Magna Cum Laude

M.Ed. - University of Southern Mississippi
        Long Beach, MS
        1990 Graduate (Adult Education)

M.S.N. - University of Texas at San Antonio
        Health Science Center
        San Antonio, TX
        1992 Graduate (Nurse Anesthesia)

University of South Florida Health Care Risk Management Program

## **Certifications:**

AANA Board Certification (current)
Florida RN/CRNA License (current)
Florida Healthcare Risk Manager's License (current)
Advanced Cardiac Life Support (current)
Basic Life Support (current)
Pediatric Advanced Life Support (current)
Neonatal Resuscitation Course (not renewed)
Trauma Nurse Core Curriculum Instructor (not renewed)

Member, American Association of Nurse Anesthetists
Member, American Society of Healthcare Risk Managers
Member, Florida Association of Nurse Anesthetists
Member, International Association of Forensic Nurses

**Article:**
**Upper Extremity Positioning Injuries during Operative/Other Invasive Procedures**
Nurse.com Online CE Module:

http://ce.nurse.com/course/ce416/proper-positioning-helps-avoid-nerve-damage-during-surgery/

(recently revised by Nancymarie Phillips, PhD, RN, RNFA, CNOR(E))

**Guest Lecturer, University of Kansas 60th Annual Anesthesia Symposium (4/17/10)**
    **-Anesthesia Risk Management**
    **-Medicolegal Aspects of Anesthesia**

**Guest Lecturer, Maryland Association of Nurse Anesthetists Spring Meeting 2012 (3/3/2012)**
    **-Anesthesia Risk Management**

**Guest Lecturer, Iowa Association of Nurse Anesthetists Annual Meeting 2014 (9/26/2014)**
    **- Anesthesia Risk Management**
    **-Critical Incident Response**
    **-Patient Safety Organizations**

### Abbreviated Employment History

President, **Anesthesia Consulting.** An anesthesia medical-legal consulting, training, risk management, peer review, and staffing company.

**2005-present**

Independent Contractor, cumulatively full-time at hospitals and surgery centers in the Tampa/Sarasota/Lakeland Florida area. Currently credentialed and regularly practicing at the following:

Central Florida SurgiCenter 2005-present
Bay Area Physicians Surgery Center 2009-present
Tampa Bay Special Surgery Center, Pinellas Park 2013-present
Laser Spine Institute, Tampa 2013-present
Bayview Surgery Center, Sarasota 2014-present
St. Petersburg Endoscopy Center, 2014-present
Florida Hospital Zephyrhills, 2015-present

**2002-2005**
Staff Nurse Anesthetist
MacDill AFB Hospital
(Via contract)

Provide all anesthesia services (general, regional, MAC, blocks) independently (in an all CRNA department) on all ages of patients ASA class III and below. Particular expertise in the following regional techniques: spinal, epidural, femoral nerve block, interscalene block, axillary block, retrobulbar block (only anesthesia provider at the facility providing this block). Also responsible for scheduling, conscious sedation review, assisting with peer review.

**1992-2002**
Staff Nurse Anesthetist
Former **Chief, Anesthesia Services**
Major, United States Air Force

Shaw AFB, SC (1996-1999) and MacDill AFB, FL. (1992-1996 and 1999-2002). Responsible for manning, scheduling, administrative supervision of all anesthesia providers (including anesthesiologists), quality assurance, budgeting and procuring equipment. Provide all anesthesia services (general, regional, MAC, blocks) non-medically directed. Solo call provider for surgery and OB services. Stood down from Chief position to prepare for retirement and allow replacement to assume duties.

**2000-2002**
Locum tenens anesthesia services:
University Community Hospital, Tampa FL. Main OR and OB/Gyn services.
Brandon Regional Hospital, Brandon FL. OB/Gyn services.

**1997-1999**
Locum Tenens anesthesia services:
Richland Memorial Hospital, Columbia, SC. Level I Trauma Center, anesthesia care team (ACT) setting. Provide all anesthesia services including OB and Trauma.
Clarendon Memorial Hospital, Manning, SC. Rural Hospital. Provide anesthesia for General Surgery, OB/Gyn. Solo provider during scheduled hours and on-call.

**1993-1996**
Locum Tenens anesthesia services:
Tampa General Hospital, Tampa, FL. Level I Trauma Center, ACT setting. Provided primarily General Surgery, ENT, Orthopedic anesthesia services.
St. Joseph's Hospital, Tampa, FL. Level II Trauma Center, ACT setting. Provided all anesthesia services except OB.
Sarasota Memorial Hospital, Sarasota, FL. Provided in-house OB call in an ACT setting.

Credentialed at the following facilities at the times shown:

Current:
Central Florida SurgiCenter 2005-present
Bay Area Physicians Surgery Center 2009-present
Tampa Bay Special Surgery Center, Pinellas Park 2013-present
Bayview Surgery Center, Sarasota 2014-present
St. Petersburg Endoscopy Center, 2014-present
Florida Hospital Zephyrhills, 2015-present
Pediatric Surgery Center, Brandon/Odessa 2015-present

Previous:
MacDill AFB Hospital 2002-2008
Doctor's Hospital 2005-2012
Doctor's Same Day Surgery Center 2005-2012
Moffitt Cancer Center 2006-2012
Bartow Hospital 2006
Brandon Hospital 2007-2011
Brandon Ambulatory Surgery Center 2007-2014
Lakeland Regional Medical Center 2008-2009
Florida Medical Clinic, Zephyrhills 2013-2014
Laser Spine Institute, Tampa 2013-2015